IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BRYAN YOUREE AND EMILY YOUREE, A/N/F A.Y.<br>　*Plaintiffs,*<br><br>*vs.*<br><br>FORT WORTH INDEPENDENT SCHOOL DISTRICT,<br><br>　*Defendant.* | §§§§§§§§§§§§ CIVIL ACTION NO. 4:24-cv-00637-O |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE COURT:

COMES NOW, Plaintiffs, Bryan Youree and Emily Youree, as next friends to A.Y., a minor child, ("Plaintiffs"), to file this *Plaintiffs' First Amended Complaint* against the Defendant Fort Worth Independent School District ("FISD") as follows:

### A.   NATURE OF SUIT

1. At all times relevant, Plaintiff A.Y. was a student attending the McLean Middle School in Fort Worth ISD. While under the supervision of Defendant, Plaintiff was discriminated against. Plaintiff experienced race-based bullying and harassment by fellow students. Defendant failed to address these incidents appropriately and engaged in retaliation against A.Y. A.Y. is an African American girl with a severe food allergy. At all times during this time period, A.Y. was a sixth grade and seventh grade student attending public school in Fort Worth Independent School District.

2. Plaintiff suffered emotional distress and depression from these discriminatory acts.

3. Plaintiff now files this action for relief pursuant to 42 U.S.C. § 2000d et. seq., 42 U.S.C. § 12101 et. seq., 42 U.S.C. § 12131 et. seq. and 29 U.S.C. § 794 with regard to the

violations of the laws of the United States, the denial of Plaintiff's equal protection rights, procedural due process violations, and substantive due process violations under the Fourteenth Amendment to the U.S. Constitution.

### B.  PARTIES

4. Plaintiff is an individual residing in Texas.  Plaintiff A.Y. is a minor and this matter is being asserted by her parents, Bryan Youree and Emily Youree, as A.Y.'s next friend. Because of the privacy issues involved in this matter, Plaintiff is hereby exercising her right to proceed with this matter anonymously.

5. The need to protect the identity of Plaintiff A.Y. (being a minor) shall not hinder the defense of this matter, for the facts are well known to the Defendant. When applying the balancing tests to determine the needed protection of the minor versus the small inconvenience to the Defendant, the protection of the minor prevails.

6. At such time as the Court might agree on procedures designed to protect the privacy of Plaintiff A.Y.'s identity shall be disclosed.

7. Defendant, Fort Worth Independent School District, is a public school district operating in the State of Texas as a political subdivision of the state of Texas.

### C.  SERVICE

8. Defendant is represented by counsel and may be served by electronic filing.

### D.  JURISDICTION and VENUE

9. The jurisdiction of this Court is in accordance with 28 U. S. C. § 1331 as involving a *federal question* proceeding arising under 42 U.S.C. § 2000d et. seq. 42 U.S.C. § 12101

et. seq., 42 U.S.C. § 12131 et. seq. and 29 U.S.C. § 794.

10. Venue is proper in Tarrant County, Texas because Defendant's conduct occurred in Tarrant County, Texas at the time of the incident. Venue is also proper in Tarrant County, Texas because all of the behavior alleged occurred in Tarrant County, Texas.

### E. FACTUAL ALLEGATIONS

11. Plaintiff was born on February 17, 2011.

12. At all times relevant to this action, Plaintiff was a student attending public school in Fort Worth Independent School District.

*The Discriminatory Acts*

13. At the beginning of A.Y.'s sixth grade year, August of 2022, another student, Student A, asked the teacher to move her away from A.Y. By the end of that same week, Student A has gotten every other girl in that class to ask to be moved away from A.Y. The teacher recognized Student A was engaging in this bullying and harassing behavior and reported it to the administration of the 6th grade campus.

14. During the spring of 2023, Student A and Plaintiff A.Y. made the cheer team. Student A bullied and harassed Plaintiff A.Y. further and said, "I'm going to do everything I can to get you kicked off the cheer team," and "you will get demerits if you go see the counselor."

15. On or about May 1, 2023, Plaintiff A.Y. was talking with some friends and Student A walked up to Plaintiff A.Y. with a group of boys. Student A and the group of boys engaged in racist discrimination and harassment of Plaintiff A.Y., calling her a monkey and an orangutan. Student A repeatedly bullied, harassed, and assaulted Plaintiff A.Y. by pushing into the group of boys and the group of boys repeatedly bullied, harassed, and assaulted

Plaintiff A.Y. by pushing Plaintiff A.Y. back towards Student A. Plaintiff A.Y. lost her balance and grabbed a boy's hoodie and both Plaintiff A.Y. and the boy fell to the ground. The following day, the boy's parents asked the school to investigate Plaintiff A.Y. for "assaulting" their son. This was investigated by the administration and there was no fault assessed to Plaintiff A.Y. Student A and the group of boys involved in this incident did were given the consequences, as anemic as they were, for their actions by having their parents contacted regarding the misconduct.

16. At the end of the school year fun-day, in May of 2023, Student A continued to harass and bully Plaintiff A.Y. by chasing her. When Plaintiff A.Y. fell down, skinning her hands and knees, Student A bullied, harassed and assaulted Plaintiff A.Y. by pouring so much water over Plaintiff A.Y. that it soaked her from her head to her socks. This was after Plaintiff A.Y asked the other students not to get her wet because she has natural textured hair.

17. On May 4, 2023, Plaintiff A.Y.'s parents alerted the head cheer coach, Coach Livingston, for McLean Middle School to the issues Plaintiff A.Y. was experiencing with Student A.

18. On or about June 1, 2023, before cheer camp, Plaintiff A.Y.'s parents received a phone call from the McLean Middle School vice principal stating that some of the other students' parents had informed the school that Plaintiff A.Y. was offering $100 to Student B to beat up Student A. This assertion was false.

19. On June 22, 2023, Plaintiff A.Y.'s parents had a meeting with one of the counselors at McLean Middle School to address these false allegations by the other students' parents.

20. On June 27, 2023, Plaintiff A.Y. received 5 demerits at cheer camp.

21. On June 27, 2023, a student's mother informed Plaintiff A.Y.'s parents that Student A's mother was group texting other students' parents asking if their students had had problems

with Plaintiff A.Y., falsely claiming that A.Y. was a "mean bully" and that Student A's mother was hoping that that Plaintiff A.Y. would quit the cheer team or that she would be removed from the cheer team.

22. On August 2, 2023, the cheer coach, Coach Livingston, emailed Plaintiff A.Y.'s parents and Student A's mother stating that the coach asked Plaintiff A.Y. and Student A to pick lockers "apart from each other" because of their past issues. Student A's mother responded to the email thanking Coach Livingston for "protecting her daughter."

23. On August 3, 2023, during orientation, Plaintiff A.Y. was told that she could go ahead and choose her locker like every other student was able to do that day. She walked to a locker beside a friend of hers. Student A continued to harass Plaintiff A.Y. and interrupted and told Plaintiff A.Y. that the Coach Livingston said that Plaintiff A.Y. cannot be near her (Student A), and that she cannot even be on the same hall. Plaintiff A.Y. was forced to pick a locker on a separate hall. Plaintiff A.Y.'s parents emailed Coach Livingston about this, and Coach Livingston responded by stating that she was very disappointed in Plaintiff A.Y. for not following her instructions and attempting to have a locker near Student A. Coach Livingston said that Plaintiff A.Y. was not following her instructions to give Student A space. Plaintiff A.Y.'s parents reported this incident of Student A's bullying and harassment and Coach Livingston's restrictions on Plaintiff A despite knowing about Student A's misconduct towards Plaintiff A.Y. to the appropriate staff at McLean Middle School.

24. On August 7, 2023, Plaintiff A.Y.'s parents emailed Coach Livingston expressing concerns about the requirement that Plaintiff A.Y. should give Student A space and requested an explanation about this new requirement. Coach Livingston demonstrated indifference to

this concern by never responding to Plaintiff A.Y.'s parents.

25. On August 15, 2023, Plaintiff A.Y.'s parents submitted an incident report to the school administration regarding several acts of bullying and harassment by Student A toward Plaintiff A.Y. on August 14, 2023, and August 7, 2023.

26. On August 24, 2023, Coach Livingston reprimanded Plaintiff A.Y. and gave her 10 demerits in front of all of the students in the locker room because Plaintiff A.Y. went back into the locker room to get her makeup and talk with a friend of hers after practice. Coach Livingston informed Plaintiff A.Y. that she was guilty of bullying and instructed her to sign a document that listed Plaintiff A.Y.'s "offenses." Coach Livingston informed Plaintiff A.Y. that she was suspended from the cheer team. Plaintiff A.Y. missed the first two football games due to this suspension. Later that day Plaintiff A.Y. asked to speak with Principal Ozuna. Principal Ozuna informed Plaintiff A.Y. that this was just the way it was going to be this year and that she had to give Student A "space." Principal Ozuna further restricted Plaintiff A.Y. that she could no longer sit with the 8th grade girls in the auditorium, that she had to stay away from Student A's friends and that she was not allowed to form new friendships on the cheer team. Principal Ozuna told Plaintiff A.Y. that regarding the 7th grade cheerleaders that were friends with both her and Student A, those cheerleaders would have to choose who they wanted to be friends with, either Student A or Plaintiff A.Y., and Plaintiff A.Y would have to respect that. When Plaintiff A.Y. asked Principal Ozuna if she could call home, Principal Ozuna refused to allow her to do so. Principal Ozuna was aware of Plaintiff A.Y. and her parents' complaints of the harassment, bullying, and racist discrimination against Plaintiff A.Y. Principal Ozuna showed indifference to these issues by failing to take action to support Plaintiff A.Y. and instead

punishing her with numerous restrictions.

27. On August 24, 2023, Plaintiff A.Y.'s parents were informed that the cheerleaders' Chick-Fil-A orders would include a Chick-Fil-A sandwich which includes sesame. Plaintiff A.Y. has a severe contact bi-phasic anaphylactic food allergy to sesame, of which Defendant was aware. Plaintiff A.Y.'s parents were incorrectly told that Plaintiff A.Y.'s accommodations for her food allergy were not applicable at school-related extracurricular activities. Parent of Student A was placed in charge of ordering food for the cheerleaders despite previously voiced concerns about Student A's parent's behavior towards Plaintiff A.Y. Defendant's failure to take the reasonable and necessary steps to accommodate Plaintiff A.Y.'s medical condition was discriminatory.

28. On August 25, 2023, the parents of Plaintiff A.Y. requested an urgent meeting with McLean Middle School staff about all of these issues. Defendant again showed indifference as they never responded to Plaintiffs' request.

29. On August 27, 2023, the parents of Plaintiff A.Y. following up on the August 14, 2023, email requested a reason as to why there was requirement for Plaintiff A.Y. to give Student A space.

30. On August 28, 2023, Plaintiff A.Y. had to attend cheer practice or she would receive more demerits. At cheer practice, Plaintiff A.Y. was told, in front of the other cheerleaders, that she was not allowed to cheer and had to sit on the sidelines during practice.

31. On August 28, 2023, Plaintiff A.Y.'s parents emailed McLean Middle School staff again asking about the situation. This email was not substantively responded to. That same day, in the evening, Zamora Sebesta, Assistant Principal, emailed Plaintiff A.Y.'s mother and asks for a meeting on September 6, 2023.

32. On August 29, 2023, at the first football game, Plaintiff A.Y. was not allowed to wear her cheer uniform because she was suspended. The day of the game, ten boys from the football team asked Plaintiff A.Y. if it is true that she was kicked off of the cheer team.

33. On August 29, 2023, Plaintiff A.Y.'s parents emailed again requesting answers to their questions. On August 30, 2023, Zamora Sebesta, Assistant Principal, responded stating she will answer questions at the September 6, 2023, meeting.

34. On August 30, 2023, Plaintiff A.Y.'s mother emailed Gloria Martinez, Principal Ozuna's immediate superior, about the situation. At 3:30 p.m., Plaintiff A.Y.'s parents received an email from Principal Ozuna.

35. On August 30, 2023, Plaintiff A.Y. was sexually harassed by another student. A male student touched both of A.Y.'s breasts. This incident was properly reported to Defendant. Defendant failed to take multiple actions required under Title IX and Defendant's own school board policies, demonstrating indifference to this sexual harassment.

36. Throughout the school year, Student A would enter a room, bully and harass Plaintiff A.Y. by inserting herself into Plaintiff A.Y.'s group and inform Plaintiff A.Y. that Plaintiff A.Y. must "give her space" and leave. Student A also bullied and harassed Plaintiff A.Y. by doing this at a school-sponsored event which Plaintiff A.Y.'s mother witnessed it. On September 20, 2023, Plaintiff's mother submitted a formal complaint about this. Plaintiff's mother received an email from Principal Ozuna stating that this behavior was not acceptable and that there would be an investigation. Defendant did not take the required actions in response to a complaint of a student being bullied and harassed, demonstrating indifference to Plaintiff's A.Y.'s complaint.

37. On September 13, 2023, Plaintiff A.Y. was assaulted, bullied and harassed when she was

tripped by Student B during PE class. Student B then engaged in racial discrimination by calling Plaintiff A.Y. the "n" word. On September 14, 2023, Student B, along with some other students, aggressively pursued Plaintiff A.Y. in the cafeteria and directed racial slurs, including the "n" word and "monkey," at Plaintiff A.Y. Plaintiffs requested a bullying investigation. Defendant claimed it investigated these complaints. However, despite this egregious conduct Defendant shockingly concluded, "based on our extensive investigation we find that bullying, as defined by law and FWISD policy has not occurred." Defendant was indifferent to the racist discrimination that occurred.

38. The parents requested an anti-bullying plan from the school in their level 1 and level 2 appeals to the school. The school agreed in both their level 1 and level 2 responses to institute an anti-bullying plan to protect Plaintiff A.Y. To date an anti-bullying plan has not been instituted demonstrating further indifference on the part of the Defendant.

### *Harm Suffered by Plaintiff*

39. The discrimination, bullying and harassment as to Plaintiff was harmful to her and she was permanently scarred emotionally and mentally as a result of being the victim of the Defendant's discriminatory actions and behavior through their indifference and their punishing Plaintiff A.Y. in response to Student A's bullying and harassing.

40. Defendant discriminated against Plaintiff A.Y. by failing to provide reasonable and necessary accommodations for her medical condition of severe nut allergies, of which Defendant had knowledge.

41. Such emotional and mental harm certainly resulted in Plaintiff not being able to receive and benefit from the educational opportunities offered to the other students at Plaintiff's School.

42. As a direct result of Plaintiff being permanently scarred emotionally and mentally as a result of being the victim of the Defendant's discriminatory behavior and acts, Plaintiff's emotional and mental health is likely to continue to deteriorate.

### F. PLAINTIFF'S CAUSES OF ACTION

43. Plaintiff incorporates by reference the facts set forth in the foregoing ARTICLE D: GENERAL BACKGROUND hereof.

### COUNT ONE: DISCRIMINATION BASED ON RACE

44. Section 2000d of Title 42 of the United States Code provides:

> "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

45. Note 2-202 of Section 2000d of Title 42 of the United States Code provides:

> "Education and training programs and activities' include, but are not limited to, formal schools, extracurricular activities, academic programs, occupational training, scholarships and fellowships, student internships, training for industry members, summer enrichment camps, and teacher training programs."

46. Defendant's described acts and omissions as to Plaintiff were discriminatory because she was targeted by students and bullied due to her race, the Defendant had knowledge of this discrimination when the campus administration was informed about these acts, and the Defendant demonstrated indifference repeatedly when it failed to complete required actions in response to this knowledge.

### COUNT TWO: DISCRIMINATION BASED ON DISABILITY

47. Section 794 of Title 29 of the United States Code provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

48. Section 12101 and 12131 of Title 42 of the United States Code prohibit discriminatory acts by public entities against persons with disabilities.

49. The Congress finds that—

   (1) Physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination. 42 U.S.C. § 12101.

50. 42 U.S.C. §12131 states:

   (1) **Public entity**

   The term "public entity" means—

   (a) Any State or local government;

   (b) Any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

   (c) The National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of title 49).

   (2) **Qualified individual with a disability**

   The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation

      barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

51. 29 U.S.C. § 794 states:

    (d)    Promulgation of rules and regulations

        No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

    (e)    **"Program or activity" defined**

    For the purposes of this section, the term "program or activity" means of all of the operations of—

    (1)(A) a department, agency, special purpose district, or other instrumentality

>of a State or of a local government; or
>
>(B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.
>
>(2)(A) a college, university, or other postsecondary institution, or a public system of higher education; or
>
>(B) a local educational agency (as defined section 7801 of title 20(, system of career and technical education, or other school system;
>
>(3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship—
>
>(i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or
>
>(ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or
>
>(B) the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship; or
>
>(4) any other entity which established by two or more of the entities described in paragraph (1), (2), or (3);
>
>Any part of which is extended Federal financial assistance."

52. Plaintiff has suffered physical, emotional, and psychological harm and damages as a result of Defendant discriminated against Plaintiff A.Y. by failing to provide reasonable

and necessary accommodations for her medical condition of severe nut allergies, of which Defendant had knowledge, entitling Plaintiffs to damages for which Plaintiffs now sues.

## COUNT THREE: TITLE IX VIOLATIONS

53. In order to establish a Title IX claim, Plaintiff must show that: (1) the district had actual knowledge of the sexual harassment; (2) the harasser was under its control; (3) the harassment was based on his sex; (4) the sexual harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school"; and (5) the school acted with deliberate indifference to the harassment. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 633, 646-47 (1999).

<u>Actual Knowledge</u>

54. The Supreme Court indicated that complaints, allegations, or reports of gender-motivated harassment (including sexual harassment) are sufficient to show actual notice for Title IX purposes. *Davis at* 649, 653-54.

<u>Harassers Under School's Control</u>

55. Title IX holds that schools may be liable for damages caused by prohibited conduct by harassers if the school exercises substantial control over both the harasser and the environment in which the harassment occurs, such as when the harassers are students of the school and the harassment takes place during school hours and on school grounds. *Id. at* 644-46.

<u>Harassment Based on Sex</u>

56. Sexual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate. *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th. Cir. 2007).

<u>Severe, Pervasive and Objectively Offensive</u>

57. In *Davis*, a male student fondled a female student's breasts; spoke in vulgar language to her; engaged in sexually suggestive behavior toward her; told her "I want to get into bed with you" and "I want to feel your boobs"; and placed a door stop in his pants and acted in a suggestive manner toward her. *Id. at* 633-36. The Supreme Court concluded that the Eleventh Circuit erred in dismissing Petitioner's claims in Davis, as her allegations support the conclusion that the sexual harassment was severe, pervasive and objectively offensive. *Id. at* 653.

58. In *Vance v. Spencer County Public School District*, a female student's various peers at school called her gay, asked her to describe oral sex, cursed at her, shoved her, destroyed her homework, called her and other female students "whores" and "motherfuckers," tried to yank off her shirt, told her that he was going to have sex with her, told her he could touch her in any way he wanted and no one was going to do anything about it. *Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253, 256-57 (6th. Cir. 2000). The Court found "In the instant case, as in Davis, Alma has submitted abundant evidence of both verbal and physical sexual harassment. Although one incident can satisfy a claim, Alma has presented several instances that reflect not only severity and pervasiveness, but also circumstances that effectively denied her education." *Id. at* 259.

59. The types of cases that hold a Plaintiff has not demonstrated harassment so severe and pervasive as to have effectively denied her access to educational resources and opportunities, include crude emails. See e.g. *R.S. v. Bd. Of Educ.*, 371 Fed. Appx. 231, 233 (2nd. Cir. 2010).

<u>Deprived Access to Educational Opportunities or Benefits</u>

60. It is not necessary to show physical exclusion to demonstrate that students have been

deprived by the actions of another student or students of an educational opportunity on the basis of sex. *Davis at* 651. Rather, a plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so ***undermines and detracts from the victims' educational experience***, that the victim-students are effectively denied equal access to an institution's resources and opportunities. *Id.* A drop-off in a plaintiff's grades provides necessary evidence of a potential link between his education and student-on-student harassment. *Id. at* 652.

<u>Deliberate Indifference</u>

61. Schools are deemed "deliberately indifferent" to acts of student-on-student harassment where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances. *Davis at* 648

53. Plaintiffs told Defendant of the sexual harassment. Defendant failed to take even the ***required*** actions from Title IX and Defendant's own school board polices. Defendant's response to the reported harassment and lack of response is clearly unreasonable in light of the known circumstances.

## G.   **REQUEST FOR JURY**

54. Plaintiffs hereby request that a jury be empaneled, and, that theforegoing causes of actions and requests for relief be presented thereto.

## H.   **PRAYER FOR RELIEF**

Wherefore, premises considered, Plaintiffs pray that upon final consideration of this matter that Plaintiffs have judgment against Defendant for:

    a. Monetary damages;
    b. Reasonable and necessary attorneys' fees;

      c. Taxable expenses of litigation and costs of court;
      d. Post-judgment interest at the maximum lawful rate; and
      e. Such other and further relief to which they may be justly entitled.

Respectfully submitted,
HOWLAND SHAKE LAW, LLP
17304 Preston Rd., Suite 800
Dallas, Texas 75252
Tel: (469) 371-4282
Fax: 469-574-7660

/s/ George Shake
George H. Shake
State Bar No. 24077524
Federal ID 3684307
george@howlandshakelaw.com
Attorney for Plaintiffs