UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BRYAN YOUREE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-CV-00637-O |
| | § | |
| FORT WORTH ISD, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Defendant Fort Worth ISD's Motion to Dismiss and Brief in Support (ECF No. 13); Plaintiffs' Response (ECF No. 14); and Defendant's Reply (ECF No. 15). After examining the relevant authorities and arguments, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion.

**I.    BACKGROUND[1]**

Plaintiffs Bryan and Emily Youree bring this suit as next friends to Plaintiff A.Y. At all times relevant to the allegations in the Complaint, Plaintiff A.Y. was a student attending McLean Middle School in Fort Worth ISD. Plaintiff A.Y. is an African American girl with a food allergy to sesame and nuts. At the beginning of her sixth-grade year, in August 2022, she began having difficulties with another student, Student A. Student A asked her teacher to move her away from Plaintiff A.Y. Within a week, Student A convinced every other girl in the class to ask to be moved away from Plaintiff A.Y. The teacher recognized Student A's behavior and reported it to campus

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiffs' First Amended Complaint. *See* Pls.' First Am. Civ. Compl., ECF No. 7. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

1

administration. For the remainder of Fall 2022, there were no more disputes between Plaintiff A.Y. and Student A.

In the Spring of 2023, both Plaintiff A.Y. and Student A made the cheer team. Student A began bullying Plaintiff A.Y. once again. Around May 1, 2023, Student A and a group of boys racially taunted Plaintiff A.Y., calling her a "monkey" and an "orangutan." Student A and the group of boys proceeded to push Plaintiff A.Y. back and forth. Plaintiff A.Y. lost her balance, grabbed a boy's hoodie, and both fell to the ground. The following day, the boy's parents asked the school to investigate Plaintiff A.Y. for assaulting their son. The school administration investigated and assigned no fault to Plaintiff A.Y. The school imposed no punishment on Student A and the group of boys for their name-calling beyond contacting their parents.

That same month, Student A chased Plaintiff A.Y. at the "end-of-school-year fun-day." Plaintiff A.Y. fell and skinned her hands and knees. Student A proceeded to pour water on Plaintiff A.Y., who previously asked her classmates not to get her hair wet because she has natural textured hair. Plaintiffs informed the head cheer coach at McLean Middle School, Coach Livingston, about the issues Plaintiff A.Y. was experiencing with Student A.

Around June 1, 2023, Plaintiffs were notified by the McLean Middle School vice principal that other students' parents reported that Plaintiff A.Y. was offering $100 to Student B to beat up Student A. Plaintiffs deny this allegation. Later in June 2023, Plaintiff A.Y. received five demerits at cheer camp for unspecified reasons. In a group-text with other students' mothers, Student A's mother asked whether other children had experienced problems with Plaintiff A.Y. Student A's mother stated in the group-text that Plaintiff A.Y. was a "mean bully" and hoped that she would quit or be removed from the cheer team.

On August 2, 2023, Coach Livingston emailed Plaintiff A.Y.'s and Student A's parents, asking that the two girls pick lockers apart from each other. Student A's mother responded to the email thanking Coach Livingston for "protecting her daughter." The next day, Plaintiff A.Y. tried to choose a locker near one of her friends. However, Student A interrupted and told Plaintiff A.Y. that Coach Livingston would not let her be near her or even in the same hall. Thus, Plaintiff A.Y. had to select a locker in a separate hall.

Plaintiffs emailed Coach Livingston about this situation, in which Coach Livingston responded, stating that she was very disappointed in Plaintiff A.Y. for not following her initial locker selection instructions. On August 7, 2023, Plaintiffs emailed Coach Livingston again, requesting an explanation for why Plaintiff A.Y. should give Student A space. Coach Livingston never responded. And, on August 15, 2023, Plaintiffs submitted a report to the school administration regarding several acts of bullying and harassment by student A toward Plaintiff A.Y. This was ignored for two weeks.

On August 24, 2023, Coach Livingston gave Plaintiff A.Y. ten demerits in front of all the students in the locker room because Plaintiff A.Y. went back into the locker room to get her makeup and talk with a friend after practice. Coach Livingston informed Plaintiff A.Y. that she was guilty of bullying and instructed her to sign a document that listed Plaintiff A.Y.'s "offenses." Plaintiff A.Y. was suspended for the first two football games and was required to attend cheer practice but not participate.

Later that day, Principal Ozuna told Plaintiff A.Y. that this was the way it was going to be and that she had to give Student A "space." Principal Ozuna further restricted Plaintiff A.Y.'s ability to sit with the 8th grade girls in the auditorium, instructed Plaintiff A.Y. to stay away from Student A's friends, and told Plaintiff A.Y. that she was not allowed to form new friendships on

the cheer team. With respect to the 7th grade cheerleaders that were friends with both Plaintiff A.Y. and Student A, Principal Ozuna told Plaintiff A.Y. that they would have to choose who to be friends with. Plaintiff A.Y. asked to call home, which Principal Ozuna did not allow. Principal Ozuna was aware of the bullying, harassment, and discrimination complaints Plaintiffs had previously submitted to the school.

On August 24, 2023, the parent of Student A was placed in charge of ordering food for the cheerleaders. Plaintiffs were informed that the cheerleaders' Chick-Fil-A orders would include a Chick-Fil-A sandwich, which contains sesame, but that Plaintiff A.Y.'s accommodations for her food allergy were not applicable at school-related extracurricular activities. Plaintiff A.Y. has a severe contact bi-phasic anaphylactic food allergy to sesame. Fort Worth ISD ("Defendant") was aware of such allergy.

On August 25, 2023, Plaintiffs requested an urgent meeting with McLean Middle School to address these issues. Defendant did not respond. On August 27, they emailed again. And on August 28, Plaintiffs sent yet another email. Later that day, Assistant Principal Zamora Sebesta emailed Plaintiff A.Y.'s mother asking for a meeting on September 6, 2023, though she did not respond to the substance of Plaintiffs' emails. Therefore, the next day, Plaintiffs emailed again requesting answers to their questions. Assistant Principal Sebesta responded a day later that she would answer questions at the September 6, 2023, meeting. On August 30, 2023, Plaintiff A.Y.'s mother emailed Gloria Martinez, Principal Ozuna's immediate superior, about the situation and subsequently received an email from Principal Ozuna.

On August 30, 2023, a male student touched both of Plaintiff A.Y.'s breasts. This incident was properly reported to Defendant. According to the Complaint, Defendant failed to take multiple actions required under Title IX and Defendant's own school board policies.

On September 13, 2023, Student B tripped Plaintiff A.Y. during PE class and called her the "n" word. The next day, Student B and other students pursued Plaintiff A.Y. in the cafeteria, calling her racially charged names such as the "n" word and "monkey." Plaintiffs requested a bullying investigation, in which Defendant concluded that, based on their "extensive investigation," bullying had not occurred. Plaintiffs appealed this and requested an anti-bullying plan to protect Plaintiff A.Y. On appeal, Defendant granted Plaintiffs an anti-bullying plan, but that plan was never instituted.

Plaintiffs initiated this lawsuit against Fort Worth ISD for violating Title VI, discrimination based on race; the American with Disabilities Act ("ADA") and Section 504, discrimination based on disability; and Title IX, discrimination based on sex. Plaintiff A.Y. alleges the purported disciplinary actions against her were retaliatory. She also alleges she suffered emotional distress and depression from these discriminatory acts. Defendant moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant's Motion is ripe for the Court's review.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Rule 8(a) pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). Where a complaint contains facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court may not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III. ANALYSIS

In their First Amended Complaint, Plaintiffs brought three claims: (1) Title VI, discrimination based on race; (2) Section 504 or ADA, discrimination based on disability; and (3) Title IX, discrimination based on sex.[2] Defendant now moves to dismiss each claim under Rule

---

[2] Pls.' First Am. Civ. Compl., ECF No. 7.

12(b)(6) for failure to state a claim. The Court concludes that only one of Plaintiffs' three claims—the Title VI claim—survives Defendant's Motion to Dismiss.

### A. Title VI: Discrimination Based on Race

Plaintiffs' racial discrimination claim under Title VI survives Defendant's Rule 12(b)(6) Motion to Dismiss. Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Under Title VI, a school district receiving federal funds may be liable for racially-charged, student-on-student harassment if: (1) the harassment was severe, pervasive, and objectively offensive such that it can be said to deprive the victim of access to educational opportunities or benefits provided by the school and the district; (2) the district had actual knowledge of the harassment; (3) the district had control over the harasser and the environment in which the harassment occurs; and (4) the district was deliberately indifferent to the harassment. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015). Defendant concedes that Plaintiffs plausibly plead element three—that the district had control over the harasser and the environment in which the harassment occurs.[3] Defendant disputes the remaining elements, which are addressed in turn.[4]

  1. <u>Element One: Racially Hostile Environment</u>

Defendant argues that Plaintiffs fail to plead how the harassment deprived Plaintiff A.Y. of access to educational opportunities or benefits provided by the school to satisfy element one of a

---

[3] *See generally* Def.'s Mot. to Dismiss, ECF No. 13.
[4] *Id.* Defendant briefly argues that actual knowledge requires an "appropriate person" and that Plaintiffs fail to plead element two because of this. However, the appropriate person standard is met when the person is an official who is authorized to institute corrective measures. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). And Plaintiff shows that those who received complaints are authorized to institute corrective measures. *See generally* Pls.' First Am. Civ. Compl., ECF No. 7.

Title VI claim.[5] To meet this standard, the harassment must have a "concrete, negative effect on the victims' education, such as creating disparately hostile educational environment relative to [the victim's] peer, forcing the student to change his or her study habits or to move to another district, or lowering the student's grades." *Fennell*, 804 F.3d at 410 (alteration in original) (internal quotation marks and citations omitted).

Plaintiffs' Complaint includes sufficient factual allegations for the Court to reasonably infer that the harassment created a disparately hostile educational environment relative to the victim's peers. The September 13 and 14 incident provides direct examples of Plaintiff A.Y. losing access to educational opportunities, such as PE class, that other students enjoy.[6] Plaintiff A.Y. was the sole student forced to avoid other students and the sole student required to sit out of cheer practice.[7] She also suffered depression from which the Court can infer that her studies would have been impacted.[8]

As a result of this pattern of unaddressed racial harassment, the Court also finds it plausible to deem such harassment "severe, pervasive, and objectively offensive." Over a five-month period, Plaintiff A.Y. was verbally and physically harassed based on her race at least three times. *Cf. DiStiso v. Cook*, 691 F.3d 226, 243 (2d Cir. 2012) (noting that use of the word "nigger" approximately eight to fifteen times over a school year raised a question of whether the name-calling was severe or pervasive).

---

[5] Def.'s Mot. to Dismiss 13, n. 4, ECF No. 13.
[6] Pls.' First Am. Civ. Compl. ¶ 37, ECF No. 7.
[7] *Id.* ¶ 26, 30.
[8] *Id.* ¶ 2.

  2. <u>Element Four: Deliberate Indifference</u>

  Defendant's primary argument is that Plaintiffs do not plausibly plead the fourth element in their Complaint—that Defendant was deliberately indifferent to racial harassment.[9] Plaintiffs and Defendant agree that there are three alleged incidents of student-on-student harassment that "one could argue are explicitly based on A.Y.'s race."[10] These are the May 1, 2023 incident, the end of May 2023 incident, and the September 2023 incident.[11]

  As to the first of these incidents on May 1, 2023—in which Plaintiff A.Y. was called a "monkey" and "orangutan" and then got in a physical altercation with another male student[12]—Plaintiffs fail to show that Defendant was deliberately indifferent. Both Plaintiff and Defendant acknowledge that Defendant investigated the May 1, 2023 incident and that Defendant contacted the harassers' parents.[13] Even if the response was weak, "ineffective responses . . . are not necessarily clearly unreasonable." *Fennell*, 804 F.3d at 411 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 168 (5th Cir. 2011)). And mere negligence is not enough to establish Title VI liability; rather, the district's response should not be questioned unless it is "clearly unreasonable in light of the known circumstances." *Id.* at 410 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). Thus, Plaintiffs fail to plausibly allege that Defendant was deliberately indifferent to the May 1, 2023 incident.

  With respect to the second incident at the end of May 2023, Plaintiffs fail to plead element two—that the district had actual knowledge of the harassment—and element four's deliberate indifference requirement. Neither Plaintiffs' Complaint nor their Response mention that Defendant

---

[9] Def.'s Mot. to Dismiss 8, ECF No. 13.
[10] Pls.' Memo. Opp. Def.'s Mot. ¶ 29, ECF No. 14.; Def.'s Mot. to Dismiss 9, ECF No. 13.
[11] *Id.*
[12] Pls.' First Am. Civ. Compl. ¶ 15, ECF No. 7.
[13] *Id.*; Def.'s Mot. to Dismiss 10, ECF No. 13.

was made aware of the incident.[14] Defendant cannot be deliberately indifferent to something they had no knowledge of.

Plaintiffs plausibly plead deliberate indifference with respect to the third incident on September 13 and 14, 2023, however. This incident was accompanied by an "extensive investigation."[15] Plaintiffs allege that despite the investigation, Defendant was indifferent to the racial harassment by not finding the incident an act of bullying.[16] Plaintiffs also allege that Defendant was deliberately indifferent by not instituting the anti-bulling plan that was drafted on appeal.[17] Defendant argues that an "extensive investigation" is not deliberately indifferent[18] and that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648.

Defendant's conclusion that bullying did not occur is remarkably inconsistent with legal definitions of bullying and Fort Worth ISD policy.[19] Being "referred to by one's peers by the most noxious racial epithet in the contemporary American lexicon, [and] being shamed and humiliated on the basis of one's race is harassment far beyond normal schoolyard teasing and bullying." *Fennell*, 804 F.3d at 409 (quoting *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998) (alteration in original)). Taking the facts in Plaintiffs' Complaint as true, the Court can reasonably infer that Defendant's finding that bullying did not occur was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

---

[14] Pls.' First Am. Civ. Compl. ¶ 16, ECF No. 7; *see generally* Pl.'s Memo. Opp. Def.'s Mot., ECF No. 14.
[15] Pls.' First Am. Civ. Compl. ¶ 37, ECF No. 7.
[16] *Id.*
[17] Pls.' First Am. Civ. Compl. ¶ 38, ECF No. 7.
[18] Def.'s Mot. to Dismiss 11, ECF No. 13.
[19] *Bullying Information and Documents*, Fort Worth Indep. Sch. Dist., https://www.fwisd.org/departments/student-discipline-and-placement/bullying-information-and-documents.

Accordingly, because Plaintiffs adequately plead factual allegations showing a racially hostile environment and that Defendant was deliberately indifferent to racial harassment, the Court **DENIES** Defendant's Motion to Dismiss with respect to Plaintiffs' Title VI race-discrimination claim.

### B. Count Two: Discrimination Based on Disability

Plaintiffs' disability-discrimination claim under Section 504 or the ADA fails. Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It further defines "public entities" to include arms of the state, such as schools. *Id.* § 12131(1)(B). Therefore, to state a discrimination claim under Section 504 or the ADA, a plaintiff must allege: (1) she is a qualified individual within the meaning of the ADA or Section 504, (2) she is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity, and (3) such exclusion, denial of benefits, or discrimination is by reason of her disability.[20] 29 U.S.C. § 794; *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004). A plaintiff can satisfy the third prong under a theory of failure to accommodate—when a public entity fails to reasonably accommodate the known limitations of a qualified individual with a disability. *Windham v. Harris Cnty. Tex.*, 875 F.3d 229, 235 (5th Cir. 2017).

Defendant argues that Plaintiffs do not plausibly plead the first and third prongs of the Section 504 or ADA claim.[21] First, Defendant argues that Plaintiff A.Y.'s food allergy does not

---

[20] *See Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020) ("The close relationship between Section 504 of the Rehabilitation Act and Title II of the ADA means that precedents interpreting either law generally apply to both.").
[21] Def.'s Mot. to Dismiss 15, ECF No. 13.

qualify as a disability.[22] The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). A food allergy can constitute a disability under the ADA—especially after the 2008 Amendments Act—which mandates that a "disability . . . shall be construed in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A). Moreover, "[s]ubstantially limits" is not meant to be a demanding standard." 28 C.F.R. § 36.105. Whether an impairment substantially limits a major life activity should be construed "without regard to the ameliorative effects of mitigating measures." 42 U.S.C. § 12102(4)(E); *see, e.g., J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 670–71 (4th Cir. 2019) (rejecting the argument that the plaintiff's celiac allergy was not a disability because he could "simply avoid foods that contain gluten").

But even if Plaintiff A.Y.'s severe sesame and nut allergy could be deemed to substantially limit her ability to eat or breath, she fails to establish that any relevant party had the requisite understanding of her disability and attendant consequences. To satisfy the "known limitations" requirement, plaintiffs ordinarily need to show that "they identified their disabilities as well as the resulting limitations to a public entity or its employees and requested an accommodation in direct and specific terms." *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020) (citation omitted). "Mere knowledge of the disability is not enough; the service provider must also have understood 'the limitations [the plaintiff] experienced . . . *as a result of* that disability.'" *Windham*, 875 F.3d at 236 (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (alteration in original)). If a plaintiff fails to request an accommodation in direct and specific terms, she "can prevail only by showing that the disability, resulting limitation, and necessary reasonable

---

[22] *Id.* at 16.

accommodation were open, obvious, and apparent to the entity's relevant agents." *Smith*, 956 F.3d at 317–18 (internal quotation marks and citation omitted).

Plaintiffs fail to satisfy either of these standards. The Court cannot ascertain whether Plaintiffs ever requested an accommodation in direct and specific terms because they provide *no* information as to Plaintiff A.Y.'s purported accommodation plan or communications with Defendant about her disability.[23] Nor are there any facts that Plaintiff A.Y.'s disability, its resulting limitations, and her purported accommodation were "open, obvious, and apparent" to Student A's mother, the agent who allegedly ordered food on behalf of Defendant.[24] *Smith*, 956 F.3d at 318. In sum, Defendant cannot be charged with failing to accommodate Plaintiff A.Y.'s disability if Plaintiffs did not apprise Defendant or its agent of the consequences of her disability and the accommodation she required.

Accordingly, because Plaintiffs fail to adequately plead facts to support a failure-to-accommodate theory, the Court **GRANTS** Defendant's Motion to Dismiss with respect to Plaintiffs' disability-discrimination claim.

### C. Count Three: Title IX

Plaintiffs' Title IX claim based on a single incident of alleged sexual harassment by another student fails. A school district that receives federal funds may be liable for student-on-student sexual harassment if: (1) the district had actual knowledge of the sexual harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was so severe, pervasive, and objectively offensive such that it effectively barred the victim's access to an educational opportunity or benefit, and (5) the district was deliberately

---

[23] *See generally* Pls.' First Am. Civ. Compl., ECF No. 7.
[24] *Id.*

indifferent to the harassment. *Sanches*, 647 F.3d at 165. Element three—that the harassment was based on the victim's sex—is the only element Defendant does not challenge.[25]

Regarding element one, Defendant argues that Plaintiffs' allegations do not demonstrate actual knowledge of the sexual harassment by an "appropriate person."[26] Plaintiffs' Complaint merely states that "the incident was properly reported to Defendant."[27] The actual knowledge requirement is met if an "appropriate person"—that being "at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination"—has actual notice of the harassment. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Plaintiffs do not allege who this incident was reported to.[28] Thus, Plaintiffs do not plausibly plead element one.

With respect to elements two and four, Plaintiffs fail to allege that the touching occurred at school or in an environment where the male student was under the control of Defendant. And because Plaintiffs fail to plead whether the incident happened at school or how the incident detracted from Plaintiff A.Y.'s educational experience, the Court cannot determine if the incident "effectively bar[red] [her] access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633.

Plaintiffs do not plausibly plead element five because their Complaint only alleges conclusory statements. Specifically, Plaintiffs argue that Defendant is deliberately indifferent because "Defendant failed to take even the required actions from Title IX and Defendant's own school board policies."[29] But Plaintiffs never specify what these required actions are. Instead, they

---

[25] *See generally* Def.'s Mot. to Dismiss, ECF No. 13.
[26] Def.'s Mot. to Dismiss 22, ECF No. 13.
[27] Pls.' First Am. Civ. Compl. ¶ 35, ECF No. 7.
[28] *Id.*
[29] *Id.*

use conclusory language that is insufficient to plausibly state a Title IX claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 678–79; *Guidry*, 954 F.2d at 281.

Accordingly, because Plaintiffs fail to plead factual allegations suggesting that Plaintiff A.Y.'s Title IX claim is plausible on its face, the Court **GRANTS** Defendant's Motion to Dismiss with respect to that claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendant Fort Worth ISD's Motion to Dismiss Plaintiffs' First Amended Complaint.[30] The Court holds that Count One (Title VI discrimination) states a claim upon which relief can be granted, but it **DISMISSES with prejudice** Count Two (Section 504 or ADA discrimination) and Count Three (Title IX discrimination) for failure to state a claim under Rule 12(b)(6).

**SO ORDERED** on this **26th day of June, 2025**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[30] The Court also grants Defendant's retrospective request for leave to exceed the page limit. *See* Def.'s Reply 10, ECF No. 15.

15